**Forrest H. FOREMAN et al., Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**Civ. A. No. 63–326.**

United States District Court
S. D. Florida.

April 2, 1964.

Felix, Kniskern, Neuman & Rees, Miami, Fla., for plaintiff.

Alphonsos C. Murphy, Atty., Dept. of Justice, Washington, D. C., William A. Meadows, Jr., U. S. Atty., Lavinia L. Redd, Asst. U. S. Atty., Miami, Fla., for defendant.

CHOATE, District Judge.

This is a suit for income tax refund and came on before the Court for trial upon a stipulated set of facts. Such stipulation is adopted by the Court.

FINDINGS OF FACT

The Plaintiff is a duly licensed physician. From 1954 until June 1, 1960, plaintiff operated an orthopedic clinic in Miami, Florida as a partnership with another licensed physician, Dr. Arturo C. Ortiz.

On June 1, 1960, the plaintiff and his partner formed an association known as Boulevard Orthopedic Association. The articles of association were introduced into the record by the parties' stipulation. In form and substance these articles together with the Notice of the First Meeting and minutes of same follow closely the form and substance of typical Articles of Incorporation and Minutes of First Meeting of Stockholders.[1]

---

1. Some of the more important provisions of the articles of association were as follows:

The articles provided that the association was to continue in perpetuity. Certificates were to be issued to the associates and voting was on the basis of one vote for each 1% of interest of an associate. Annual meetings of the association were provided for.

The articles of association provided for a Board of Governors. The articles provided that the business and affairs of the association should be managed by the Board of Governors.

Under the articles of association, upon the retirement or death of an associate, neither he nor his personal representative had any interest in or right to withdraw any portion of the assets of the association.

Under the articles of association, upon retirement or death of an associate, he or his personal representative could transfer his ownership in the association provided, however, that the association and the other associates had first option to buy such interest at a value based on accounting data, reasonable good will and other intangibles.

The articles of association provided that the association should not be dissolved by death, resignation, insolvency, bankruptcy, removal or retirement of an associate.

At the time of organization of the association, the association acquired all of the assets and liabilities of the predecessor partnership. The assets of the prior partnership consisted principally of accounts receivable in the amount of $209,000 and cash in banks. There was also assigned to the association by the partnership a lease on the premises at 7101 Biscayne Boulevard, Miami, Florida, where the clinic was located. All the employees of the predecessor partnership, including nurses, secretaries, and technicians, became employees of the association.

Regular weekly meetings of the Board of Governors of the association were held. Written minutes of some meetings were made and these were also included in the record by stipulation. In form and substance these minutes reflect identity with the minutes of meeting of a corporate board of directors.

On October 11, 1960, an agreement was entered into between the association and Dr. George L. Richards, a copy of which was introduced by stipulation. On the same date, an agreement was entered into between plaintiff, Dr. Ortiz and Dr. Richards. A copy of this latter agreement was likewise introduced into the record by stipulation. The association's contract with Dr. Richards provided for a five-year employment contract setting wages, vacations, and other details of his employment. The agreement between the doctors and Dr. Richards called for the doctors to transfer to Dr. Richards six and two-thirds of their respective ownership certificates of the association annually through the term of the five-year employment contract so that if Richards fully performed on his employment contract he would become a one-third owner of the association at the end of the five-year period.

In the operation of the association, plaintiff and Dr. Ortiz performed all surgery jointly. Hospitalized patients were assigned to neither plaintiff nor Dr. Ortiz, but were visited, examined and treated by both plaintiff and Dr. Ortiz jointly or alternately prior to October 11, 1960, and by Dr. Richards as well, subsequent to October 11, 1960. No separate record was kept of the number of patients treated by a particular doctor, nor was a separate record kept of the individual billings of a particular doctor, nor did the bills sent to patients indicate the name of the particular doctor who had treated the patient. The same methods of operation described in this paragraph were used by the predecessor partnership.

The association maintained a bank account bearing the name of the association. All checks received by the association for medical services performed by the doctors were deposited in the association bank account. No fees were received or retained by the individual doctors.

The Board of Governors of the association determined the salaries to be paid to plaintiff and Dr. Ortiz and also determined their hours, working conditions and vacations.

On January 15, 1961, a letter was sent by the association to all suppliers and all persons and organizations with whom the association conducted business which advised them that Dr. Ortiz solely had the power to make purchases and to bind the Association by contractual agreements.

A Federal Income Tax Return, on the form prescribed by the Treasury Department for corporations, on Form 1120, was filed by the association for the fiscal year June 1, 1960 to March 31, 1961. During the same period, Federal Social Security Tax Returns were filed for all employees, including plaintiff, Doctors Ortiz and Richards. During the same period, Federal Tax Returns for withholding of income tax from wages were filed, and withholding statements reporting income tax withholding for each employee of the association including the three doctors were filed by the association.

The Internal Revenue Service determined that the association is to be treated for tax purposes as a partnership rather than as a corporation. It further

determined that plaintiff was a 50% partner in said partnership and that his distributable share in the partnership income for the period June 1, 1960 to December 31, 1960 was $6,907.80. It, accordingly, assessed against plaintiff income taxes for the calendar year 1960 in the amount of $4,282.84. This amount, together with interest, was paid by plaintiff on May 25, 1962. On May 25, 1962 plaintiff filed with the District Director of Internal Revenue for the District of Florida, a claim for refund of the aforesaid income tax in the amount of $4,282.84. The claim did not refer to the interest paid. However, the parties stipulated that in the event the Court decides this case in plaintiff's favor, both the income tax of $4,282.84 and the interest, are properly refundable, together with interest as provided by law.

## CONCLUSIONS OF LAW

The issue may be simply stated even though the answer thereto is somewhat more complex. Should the association be treated for tax purposes as a corporation or a partnership?

This Court has jurisdiction under Title 28 U.S.C. § 1346(a).

The parties agree that the starting points herein are the criteria enunciated in the case of Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263 (1935). In that case, the Supreme Court indicated that to determine if an organization meets the test of an association taxable as a corporation the following corporate characteristics should be considered: (a) centralized management, (b) continuity of life, (c) transferability of interests, and (d) limited liability.

The plaintiff relies upon United States v. Kintner, 216 F.2d 418 (9th Cir. 1954) affirming Kintner v. United States, 107 F.Supp. 976 (D.Mont.1952) and Galt v. United States, 175 F.Supp. 360 (N.D. Texas, 1950) to establish that the association here should be taxed as a corporation. Both of these cases are squarely in point involving as they did associations of doctors engaged in the practice of medicine who sought corporate taxa-

tion. Both cases were decided in favor of the corporate tax over the same objections as made here by the government.

I agree with the taxpayer that the Boulevard Association meets the first three criterion of the Morrissey case more strongly than did those described in either the Kintner or Galt cases. Neither this association nor those described in the cited cases did or could meet the criteria of limited liability.

The government's contention centers largely upon the premise that since physicians cannot legally form a corporation for the practice of medicine in the State of Florida, that, therefore, regardless of whatever other tests the association might meet, the association could never have the requisite substantial resemblance to a corporation required under the Federal Statute. This argument was made by the government in both the Kintner and Galt cases and therein rejected. It was similarly made in Pelton v. Commissioner, 82 F.2d 473 (7th Cir. 1936) and rejected by that Court. This Court rejects the government's contention for the same reasons given in the cited cases.

"* * * it would introduce an anarchic element in federal taxation if we determined the nature of associations by State criteria rather than by special criteria sanctioned by the tax law * * *. It would destroy the uniformity so essential to a federal tax system,—a uniformity which calls for equal treatment of taxpayers, no matter in what State their activities are carried on." (Kintner, 216 F.2d at 424)

The United States cites and in part relies upon the case of Mobile Bar Pilots Ass'n. v. Commissioner, 97 F.2d 695 (5th Cir. 1938). This case was distinguished from the present facts by the Ninth Circuit in the Kintner case (216 F.2d 418).

"So it is evident that this decision is based on the limited services which the association rendered to the pilots. By contrast, the Montana doctors are employed by the Association which receives the fees for services

rendered by them to patients. It owns the equipment and apparatus * * *. The hours and working conditions of the doctors are fixed by the [A]ssociation, as is also their vacation time. The compensation they receive comes not from the patients, but from the salaries paid to them by the Association * * *. * * *

"Unlike the * * * Pilots Association, * * * this Association paid the Social Security and Withholding Taxes required by law." (216 F.2d 423–424)

The same distinctions are present in this cause. Additionally, it may be noted that the pilot's association, unlike the medical association herein, indicated the name of the pilot who rendered the services on their billing. The pilots were allowed to receive payment direct upon occasion. The pilots were paid no salary. The association paid out the entire bank balance pro-rata each month to the member pilots, thus making it impossible for the association to ever earn or retain a profit. Therefore, I cannot conclude that the Mobile Bar Pilots Ass'n. case furnishes any precedent for a decision here.

The government also contends that the medical association largely obtains its income from personal services and thus does not earn the kind of income normally earned by a corporation. The fallacy of this argument is readily apparent when one considers the large number of corporations presently existing in our economy whose primary income is earned solely from the personal services of their employees. The corporate tax status of businesses engaged in advertising or promotion, investigation, sales, contract janitorial or secretarial service, to name a few, has not been seriously questioned to the Court's knowledge.

The Court can only conclude that on established precedent judgment must be rendered for the plaintiff. If this were a case of first impression the result might well have been to the contrary. However, the principles upon which the plaintiff relies are of relative long standing, dat-

ing back as they do to the Pelton case and seem to have been widely accepted, and this Court feels constrained not to depart therefrom.

Judgment for the plaintiff shall be submitted in the amount stipulated by the parties.