Howard A. KURZNER and C. A. Kurzner, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 67–255–Civ–CA.

United States District Court
S. D. Florida,
Miami Division.
July 3, 1968.

Cyrus A. Neuman, of Felix, Kniskern, Neuman & Rees, Miami, Fla., for plaintiffs.

William A. Meadows, Jr., U. S. Atty., Miami, Fla., and H. Stennis Little, Jr., and Howard J. Feldman, Dept. of Justice, Washington, D.C., for the Government.

The Florida Bar through its counsel, Charles L. Ruffner, of Forrest, Friedman & Ruffner, Miami, Fla., filed a brief as amicus curiae.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ATKINS, District Judge.

This suit is for refund of federal income taxes allegedly illegally collected by the government from Howard A. Kurzner for the calendar years 1964 and 1965. Counsel have waived a formal trial and the merits of the case have been considered pursuant to counsels' stipulation upon the record including the complaint, answer, and pretrial stipulation, as well as trial briefs and exhibits submitted by the plaintiff, the govern-ment, and The Florida Bar. The latter appears herein by leave of court as amicus curiae. The Court acknowledges its appreciation to The Florida Bar for its assistance in developing and presenting the issues involved herein.

The Court hereby enters its order in favor of the plaintiff taxpayer after having considered the entire record, all trial briefs, and being otherwise duly advised in the premises of this action. The order is supplemented by the following findings of fact and conclusions of law.

### FINDINGS OF FACT

The plaintiff taxpayer, Howard A. Kurzner, a duly licensed physician in the State of Florida, on August 1, 1962, entered into an employment contract with Gregory Orthopedic Associates, P.A. (hereinafter referred to as GOAPA). The contract in general required Dr. Kurzner to furnish professional services for the organization for a possible period of four years and nine months in return for a salary.

GOAPA was formed as a corporation pursuant to the Professional Service Corporation Act, Chapter 621, Florida Statutes, 1961, F.S.A., by Dr. Ledford Gregory, a licensed physician, on September 13, 1961. Prior to incorporation, Dr. Gregory operated his medical practice as a sole practitioner. When incorporated, GOAPA acquired all the assets, including the employees and liabilities of Dr. Gregory's sole proprietorship in exchange for forty-eight shares of capital stock which were issued to Dr. Gregory. Drs. Burton, Travis, and Bernard Halperin, licensed Dade County physicians were each issued one share of stock. None of these doctors was an employee of the corporation nor did he contribute any capital for his shares. Subsequently, Dr. Travis's share was sold to Dr. Kurzner, who then sold the share to a friend, a Dr. Ronald Shallow.

Since his employment with GOAPA, Dr. Kurzner has purchased twenty-four shares of capital stock in GOAPA from Dr. Gregory. In December, 1962, he re-

placed Dr. Travis as a Director and he continues to hold his original office of Vice-President.

GOAPA, since its foundation, has operated as a corporation. The Board of Directors has held regular weekly meetings, regular annual meetings and certain special meetings since incorporation. Written minutes of the annual and special meetings have been transcribed. The Board of Directors has made the decisions relative to bonuses, call schedules, vacations and hiring and firing of non-professional employees. It has annually determined the total amount of bonuses to be distributed to the doctors and it established a pension plan for employees. Stationary, billheads, medical and business forms have been printed and used in its name. It maintains a bank account in its name and all checks issued in connection with the operation of the medical practice are issued in the name of GOAPA. All accounting records are kept in the name of the corporation and receipts for payments to the corporation, statements issued to patients and all accounting records relating to the patients are in the name of the corporation. GOAPA and not the individual doctors is billed for materials furnished by suppliers. No separate record has been kept of the number of patients treated by a particular doctor. There is no separate record of the individual billings of a particular doctor. Bills sent to patients are in the name of the corporation —they do not indicate the name of the particular doctor who treated the patient. Fees earned by the individual doctors of the corporation are deposited in the corporate bank account. GOAPA, on January 29, 1964, borrowed $4,500 from the Hialeah-Miami Springs Bank without individual endorsements or guaranty. In February, 1963, GOAPA without individual endorsements or guaranty entered into a lease for the occupancy of a medical office in Miami, Florida. It was given an employer identification number by the Internal Revenue Service and it has filed quarterly federal social security tax returns for all employees and for Drs. Kurzner and Gregory. Commencing with the fiscal year ending August 31, 1962 through 1967, GOAPA has filed annual income tax returns. On each return it reported net income and paid income taxes. It has regularly filed federal income tax returns for withholding of income tax from wages, including withholding statements reporting income tax withholdings for each employee including Drs. Kurzner and Gregory.

GOAPA maintains two offices in Dade County, Florida. Drs. Gregory and Kurzner alternate between the two offices and keep alternating schedules for evening and weekend calls. During the years 1964 and 1965, a total of five non-professional employees worked for GOAPA.

In practice, there is neither duplication of work by the doctors nor is there supervision of one doctor over the other. Each doctor has the right to decide whether to accept a particular patient. As a general rule, hospitalized patients are visited, examined and treated on alternate days by each doctor. The individual doctor who sees the patient arrives at the specific fee for that particular patient. Doctors Gregory and Kurzner each have individual malpractice insurance policies which cover acts performed on behalf of GOAPA. GOAPA also has malpractice insurance policies.

> According to the contract of employment, Kurzner agrees that in the event he leaves the employ of the Corporation for any reason whatsoever other than involuntary military service, he will resell to Gregory all of the stock owned by Kurzner at the time of the severance of employment.

It also required Kurzner to repurchase the one share of stock originally owned by Dr. Travis and to resell it to Dr. Gregory upon severance of employment. The contract was purely inter se. It expressly stated that: "The rights, duties and privileges hereunder shall not be binding upon or accrue to the benefit of the heirs or assigns of the parties here-

to." Control over Dr. Kurzner's performance and conduct was reposed in the corporation. It had the right to terminate his employment "for his improper conduct, due to negligence, moral turpitude or the conduct of his personal and professional deportment in an unethical manner." Aside from the fact that the contract of employment sets forth the salary in dollar amounts, it contained a clause precluding Dr. Kurzner, upon his election to terminate the contract, from associating with, either directly or indirectly, any medical office or clinic which is engaged in the practice of orthopedic surgery within a radius of one mile from any office which is being operated by GOAPA.

In accordance with the Professional Service Corporation Act of the State of Florida, Chapter 621, Fla.Stat., 1961, the Charter of GOAPA precluded the issuance of any capital stock to anyone other than an individual who is duly licensed or otherwise legally authorized to render the same professional services as those for which GOAPA is incorporated.

The charter further precluded any shareholder from entering into a voting trust agreement or any other type of agreement vesting another person with authority to exercise the voting power of any or all of his stock. Any officer, shareholder, agent or employee of the corporation who became legally disqualified to render professional services in Florida, or who because of existing law was restricted or limited from rendering his professional services, was required to immediately sever all employment with and financial interest in GOAPA. No shareholder could sell or transfer his shares of stock except to another individual who is eligible to be a shareholder of the corporation. Before a sale or transfer of shares could occur, the transaction would have to be approved at a stockholders' meeting especially called for such purpose by no less than a majority of the outstanding stock. The shares of the stock held by the shareholder proposing to sell or transfer his shares may not be voted or counted for any purpose.

The Professional Service Corporation Act at a time material to the rights of the parties in the case at bar set forth the liabilities of the employees of the corporation as well as the corporation.

621.07 Liability of Officers, Shareholders, Corporation, etc.

Nothing contained in this act shall be interpreted to abolish, repeal, modify, restrict or limit the law now in effect in this state applicable to the professional relationship and liabilities between the person furnishing the professional services and the person receiving such professional service and to the standards for professional conduct; * * * Any officer, agent or employee of a corporation organized under this act shall be personally liable and accountable only for negligent or wrongful acts or misconduct committed by him, or by any person under his direct supervision and control, while rendering professional service on behalf of the corporation to the person for whom such professional services were being rendered; * * The corporation shall be liable up to the full value of its property for any negligent or wrongful acts or misconduct committed by any of its officers, agents or employees while they are engaged on behalf of the corporation in the rendering of professional services.

GOAPA timely filed federal income tax returns for its fiscal years ending August 31, 1962, 1963, 1964, 1965 and 1966. The Commissioner of Internal Revenue determined that GOAPA was taxable as a partnership, rather than a corporation. Dr. Kurzner was determined to be a 32% partner in the partnership for the periods ended August 31, 1964 and August 31, 1965, and a 50% partner thereafter. Accordingly, the Commissioner assessed income taxes against the plaintiffs for the calendar years 1964 and 1965 in the amounts of $2,312.01 and $4,923.51, respectively.

These amounts, together with interest, were paid on or about September 12, 1966. On September 13, 1966 plaintiffs duly filed claims for refund with the District Director of Internal Revenue for the District of Florida. The claims were denied. In its brief, the government has announced that it will not defend the merits of plaintiff's claim for the year 1964. It has decided not to defend the claim for tax refund involving 1964 in order to adhere with Revenue Proclamation 65–27, 1965–2 Cum.Bull. 1017 wherein the Internal Revenue Service announced that it would allow claims of the type herein presented arising for years prior to the promulgation of the 1965 Regulations.

## CONCLUSIONS OF LAW

This Court has jurisdiction over the subject matter of this lawsuit by virtue of the provisions of Title 28, U.S.C., Section 1346(a).

GOAPA is taxable under the Internal Revenue Code of 1954 as a corporation and not as a partnership.

Section 7701(a) of the Internal Revenue Code of 1954 defines the terms "partnership" and "corporation" as follows:

(2) PARTNERSHIP AND PARTNER.—The term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or *a corporation*; and the term "partner" includes a member of such a syndicate, group, pool, joint venture, or organization.

(3) CORPORATION.—The term 'corporation' includes associations, joint-stock companies, and insurance companies. (emphasis added).

■ As a general rule, Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes. Fawchs Mach. Co.

v. United States, 282 U.S. 375, 51 S.Ct. 144, 75 L.Ed. 397 (1931); Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831 (1947). They are entitled to substantial weight in the Courts. Lykes v. United States, 343 U.S. 118, 72 S.Ct. 585, 96 L.Ed. 791 (1952). At the very least, they embody an expert interpretation of the government's position. They are not, however, entitled to the same authoritative weight as a controlling decision or a legislative enactment. It is well nigh universally established that the Court has freedom to consider the wisdom of a Treasury regulation, especially where, as here, the subject regulation was not issued contemporaneously with the promulgation of the Code provision which it seeks to interpret, it does not embody a long standing interpretation, and there has been no evidence of re-enactment by Congress. 1 Davis, Administrative Law, Ch. 5, Interpretative, Legislative, And Retroactive Rules, § 503, p. 300 (1958). See generally, Eisenstein, Some Iconoclastic Reflections on Tax Administration, 58 Harv.L.Rev. 477 (1945); Griswold, A Summary of the Regulations Problem, 54 Harv.L.Rev. 398 (1941); Feller, Addendum to the Regulations Problem, 54 Harv.L.Rev. 1311 (1941); Surrey, The Scope and Effect of Treasury Regulations Under the Income Estate, and Gift Taxes, 88 U. of Pa.L.Rev. 556 (1940).

■ The Court, cognizant of these principles, is of the opinion that Section 301.7701–2(h), Treasury Regulations 1965, cannot be sustained as valid. It is unreasonable.

The government strongly relies upon the provisions of Section 301.7701–2(h) contained in the 1965 Treasury Regulations in support of the Commissioner. In substance, this regulation permits the Commissioner to determine that validly incorporated professional service organizations constitute partnerships for federal income tax purposes if they more closely resemble partnerships than corporations. Detailed criteria are set

forth in the regulation to guide the Commissioner in making his decision. It cannot be doubted that except for the most unusual circumstances, these criteria preclude all professional service organizations from achieving corporate tax status. One need only compare Section 301.7701–2(h) with sections 301.7701–2(a)–(g) to perceive this phenomenon. It at once becomes apparent that a dual set of criteria exists. One set is for the non-professional organization. The other and much stricter set of criteria is for the professional service organization. There is no support for this discrimination either in the cases or elsewhere. There is no factual or legal characteristic which would justify different tax treatment of closely held professional service organizations, on the one hand, and closely held non-professional service organizations, on the other hand.

> "The fallacy of [the Treasury's] argument is readily apparent when one considers the large number of corporations presently existing in our economy whose primary income is earned solely from the personal services of employees. The corporate tax status of businesses engaged in advertising or promotion, investigation, sales, contract janitorial or secretarial service, to name a few, has not been seriously questioned to this court's knowledge." Foreman v. United States, 232 F. Supp. 134, 137 (S.D.Fla.1964).

Aside from the above, the Regulation herein involved contradicts the clear and unequivocal language of Section 7701(a) of the Internal Revenue Code of 1954. GOAPA is validly incorporated under Florida law. According to the unequivocal express terms of Section 7701(a) it cannot constitute a partnership for tax purposes and must constitute a corporation. There simply is no precedent in case law for the proposition that an organization validly incorporated under state law is taxable as a partnership rather than a corporation aside from the "business purpose" rule of Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79

L.Ed. 596 (1935); Anderson, Tax Aspects of Professional Corporations, U.S. C. 15th Tax Inst. 309 (1963); Eaton, Professional Associations as Planning Techniques, N.Y.U. 24th Inst. on Fed. Tax 671 (1966); Note, Professional Corporations and Associations, 75 Harv. L.Rev. 756 (1962); Scallen, Federal Income Taxation of Professional Associations and Corporations, 49 Minn.L.Rev. 603 (1965). There is precedent for the proposition that because Treasury Regulation 301.7701–2(h) contradicts the clear language of Section 7701(a) of the Code it is invalid. See Empey v. United States, 272 F.Supp. 851 (D.Ct.Colo. 1967); and O'Neill v. United States, 281 F.Supp. 359 (N.Dist.Ohio 1968). The Court need not and does not at this time reach such a conclusion. As previously noted, there is another reason why the Commissioner's ruling cannot be sustained. Suffice it to say that the apparent inconsistency between the Regulation and the Code is but another factor supporting the conclusion that the Regulation is unreasonable.

The unreasonableness of the Regulation is brought into sharper focus when it is read in juxtaposition with Morrissey v. Commissioner of Internal Revenue, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed 263 (1935); United States v. Kintner, 216 F.2d 418 (9th Cir.1954); Galt v. United States, 175 F.Supp. 360 (D. Ct.Texas, 1959); and Foreman v. United States, 232 F.Supp. 134 (S.D.Fla. 1964). In the landmark case of *Morrissey,* the Supreme Court established that the proper classification of unincorporated organizations for federal tax purposes depended upon whether their essential characteristics were those of a partnership or those of a corporation. *Kintner, Galt,* and *Foreman* each involved a group of doctors who formed unincorporated organizations at a time prior to and without the benefit of any state professional service corporation statute. The respective courts, applying *Morrissey,* concluded that the organization more closely resembled a corpora-

tion than a partnership and therefore was taxable as a corporation.

 *Morrissey* set forth four significant factors the presence or absence of which should determine corporate tax status or not. They are: continuity of life, limited liability, centralized management, and transferability of interests. The case at bar, when analyzed in terms of these four factors presents a stronger case for corporate tax status than was presented in *Kintner, Galt,* and *Foreman.* The charter of GOAPA provides for perpetual existence. The stockholders of GOAPA by virtue of the provisions of Chapter 621.13 of the Florida Statutes, F.S.A., have sharply limited liability. Their liability differs from the liability of a stockholder in any other corporation only in that each is personally liable for negligent or wrongful acts performed by him or by any employee under his direct supervision or control. Shareholder liability in the *Kintner, Galt,* and *Foreman* cases was unlimited. Centralized management in GOAPA is identical to that in *Kintner, Galt* and *Foreman.* In each case there was either an Executive Committee, Board of Directors, or Board of Governors that managed the affairs of the associates. No special significance can be attached to the fact that Drs. Gregory and Kurzner were both stockholders and Board members. This situation is found in the myriad general corporations in Florida which number only one or two stockholders. Stock in GOAPA is transferable, but only to another licensed physician and only with the consent of the majority of the stockholders. A similar limitation upon transferability is found in *Galt* and *Foreman.* In *Kintner,* the interests of the members were non-assignable. Notwithstanding the limitation that is present in the case at bar, the ability to transfer interests without disturbing continuity of the enterprise and the ability to issue interests to large numbers of participants is not affected. It is the latter factor and not the presence or absence of limitations on transferability per se that is important. In-deed, the limitation involved herein provides the very cornerstone for assuring that no one but a member of the profession be he doctor, attorney, certified public accountant, or otherwise, can exercise a voice in the policy of the organization. To permit a non-professional person to exercise a voice in policy may well be unethical in most professions.

The Court, having entered its findings of fact and conclusions of law, hereby

Orders and adjudges that final judgment shall be entered in favor of the plaintiff-taxpayers. Counsel for plaintiffs shall submit a proposed final judgment within fifteen days from the date of this order.