PELTON et al. v. COMMISSIONER OF INTERNAL REVENUE.

Nos. 5619, 5620.

Circuit Court of Appeals, Seventh Circuit.

March 20, 1936.

474

John L. Hopkins, of Chicago, Ill. (Marcus Whiting, Leo T. Norville, George F. James, George E. McMurray, and Frank J. Delany, Jr., all of Chicago, Ill., of counsel), for petitioners.

Frank J. Wideman, Asst. Atty. Gen., Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., and Joseph M. Jones, of Washington, D. C., for respondent.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

Deficiencies in income taxes were determined against petitioners by the Commissioner of Internal Revenue for the years 1924, 1925, 1926 and 1927, upon the ground that the Pelton Clinic was an association within the meaning of section 2 (a) (2) of the Revenue Acts of 1924 and 1926, 26 U.S.C.A. § 1696 and note. Appeals were taken from two decisions of the Board of Tax Appeals which confirmed the determination of the Commissioner. They involve the same facts and the same questions and they were consolidated for hearing.

In substance, the findings of the Board are as follows: Between 1913 and 1920, Ora L. Pelton, Sr., Ora L. Pelton, Jr., and S. L. Gabby were practicing physicians and surgeons in Elgin, Illinois. The Peltons specialized in surgery, and Gabby specialized in internal medicine. They occupied offices with a common waiting room, and shared office expenses, but were not partners.

On September 1, 1920, they entered into an indenture whereby they transferred to themselves, as trustees, property of an estimated value of $14,000, consisting of office furniture and equipment, instruments, laboratory equipment, library and x-ray equipment. The junior Pelton died in 1929, leaving the senior Pelton and Gabby as surviving trustees.

The indenture authorized the trustees to use the properties conveyed to them in any manner they might deem advisable, to operate clinics and any business or professional pursuit allied therewith, to retain any professional assistance necessary to discharge such duties, including that of the trustees, in a professional capacity insofar as possible, and to incur indebtedness and invest and reinvest in securities.

The trustees were required to maintain accurate accounting records, to furnish annual statements to the beneficiaries, and to distribute the net income annually or oftener. For their services as trustees they were to receive salaries not in excess of $25,000 a year. They had power to divide their duties and to assume appropriate titles, and they were not to be liable in a personal capacity for the duties performed by them.

Vacancies among the trustees were to be filled by the beneficiaries, and holders of fifty-one percent of the beneficial interests had power to modify the trust.

The trust was to be designated as "The Pelton Clinic," "The Pelton Clinic, not Inc.," or "The Pelton Clinic Trust," and was to last ten years, at the end of which time the assets were to be distributed to the beneficiaries then of record.

At the beginning, Pelton, Sr., had a beneficial interest of forty percent, representing 200 units; Pelton, Jr. had thirty-five percent, representing 175 units; and Gabby had twenty-five percent, representing 125 units, and provision was made for the disposition to his wife or other relatives of any units of which any one of the beneficiaries died possessed.

The beneficial interests were to be represented by shares, which were transferable, and of which a record was to be kept. Options to purchase at $30 per share were to be given to other beneficiaries before any interests were sold to outsiders.

Amendments to the original indenture were made by the beneficiaries of January 1, 1924. One changed the option purchase

price from $30 per unit to the book value of the unit, and the other provided for the retention of $10,000, or seventy-five percent of the net income for each year, whichever was the greater, to be used in acquiring fixed or other assets for the trust.

The proportionate share of each doctor was originally determined according to his agreed value to the Clinic, based on earning capacity and not on the property contributed. They were the sole beneficiaries through all the taxable years involved. During all the years the clinic employed at least one physician in addition to the three trustees, and during the last two years, 1926 and 1927, it employed three additional physicians. While by far the largest part of its income was derived from the professional services of the trustee-beneficiaries, it also derived some income from interest on bonds owned by it, and from the rental of a room to a druggist for a drug store,

and a very small amount in 1927 from glasses.

The only issue presented is whether for the years in question, the Doctors Pelton and Gabby constituted an association taxable as a corporation under the Revenue Acts of 1924 and 1926. In their petition for review, petitioners argued that they were a true trust, the income of which should be taxed to the beneficiaries. In their brief presented to this court, they argue that their liability was that of partners rather than of an association.

In both Acts it is provided that the term "corporation" includes associations, joint stock companies, and insurance companies.

The pertinent Treasury Regulations under the Act of 1924 are found in Articles 1502, 1503, and 1504 of Regulations 65, promulgated October 6, 1924.[1] Article 1502 was amended in a manner not here material, on August 31, 1925. Article 1504 was amended as shown in the margin,[2] on Au-

1 "Art. 1502. *Association.*—Associations and joint-stock companies include associations, common-law trusts, and organizations by whatever name known, which act or do business in an organized capacity, whether created under and pursuant to State laws, agreements, declarations of trust, or otherwise, the net income of which, if any, is distributed or distributable among the shareholders on the basis of the capital stock which each holds, or, where there is no capital stock, on the basis of the proportionate share or capital which each has or has invested in the business or property of the organization. * * *

"Art. 1503. *Association Distinguished from Partnership.*—An organization, the membership interests in which are transferable and the business of which is conducted by trustees or directors and officers without the active participation of all the members as such, is an association and not a partnership. The term 'partnership' means only ordinary partnerships, and organizations which have a fixed capital stock divided into shares represented by certificates transferable only upon the books of the company, which manage their affairs by a board of directors or executive officers, and which conduct their business in the general form and mode of corporations are joint-stock companies or associations within the meaning of the statute even though under State law such organizations are technically partnerships.

"Art. 1504. *Association Distinguished from Trust.*—Holding trusts, in which the trustees are merely holding property for

the collection of the income and its distribution among the beneficiaries, and are not engaged, either by themselves or in connection with the beneficiaries, in the carrying on of any business, are not associations within the meaning of the law. The trust and the beneficiaries thereof will be subject to tax as provided in articles 341-347. Operating trusts, whether or not of the Massachusetts type, in which the trustees are not restricted to the mere collection of funds and their payments to the beneficiaries, but are associated together in much the same manner as directors in a corporation for the purpose of carrying on some business enterprise, are to be deemed associations within the meaning of the Act, regardless of the control exercised by the beneficiaries."

2 "Art. 1504. *Association Distinguished from Trust.*—Where trustees merely hold property for the collection of the income and its distribution among the beneficiaries of the trust, and are not engaged, either by themselves or in connection with the beneficiaries, in the carrying on of any business, and the beneficiaries have no control over the trust, although their consent may be required for the filling of a vacancy among the trustees or for a modification of the terms of the trust, no association exists, and the trust and the beneficiaries thereof will be subject to tax as provided by section 219 and by articles 341-347. If, however, the beneficiaries have positive control over the trust, whether through the right periodically to elect trustees or otherwise, an association exists within the meaning of section 2. Even in

gust 31, 1925. Treasury Decision 3748. The three articles as thus amended were promulgated under the Revenue Act of 1926, as Articles 1502, 1503 and 1504 of Treasury Regulations 69.

Since the filing of appellant's first brief in this cause the Supreme Court on December 16, 1935, announced four decisions which appear to us clearly determinative of the question before us: Morrissey and O'Brien, Trustees, v. Commissioner, 296 U. S. 344, 56 S.Ct. 289, 80 L.Ed. ——; Helvering v. Coleman Gilbert Associates, 296 U.S. 369, 56 S.Ct. 285, 80 L.Ed. ——; Swanson et al., Trustees, v. Commissioner, 296 U.S. 362, 56 S.Ct. 283, 80 L.Ed. ——, and Helvering v. Combs and Everett, Trustees, 296 U. S. 365, 56 S.Ct. 287, 289, 80 L.Ed. ——.

Those decisions hold that a trust is an association when (1) it is carrying on a business enterprise for profit, and (2) it has substantial resemblances to a corporation. They hold further that the presence of continuity of enterprise, centralized control, and limitation of liability constituted such substantial resemblances to a corporation as to warrant the Commissioner in considering the organizations as associations for the purpose of taxation. In the last named of these cases, the Combs and Everett Case, the Court said: "Here, through the medium of a trust the parties secured centralized management of their enterprise, and its continuity during the trust term without termination or interruption by death or changes in the ownership of interests, and with limited liability and transferable beneficial interests evidenced by certificates. Entering into a joint undertaking they avoided the characteristic responsibilities of partners and secured advantages analogous to those which pertain to corporate organization. The fact that meetings were not held or that particular forms of corporate procedure were absent is not controlling."

It is obvious from this record that petitioners' enterprise was carried on for profit, and it is likewise clear that all the substantial points of resemblance to a corporation as specified in the decisions mentioned were present in their organization. On the other hand, substantial dissimilarities to the partnership form appear. Petitioners have

called our attention to a recent decision of the Illinois Supreme Court, People v. United Medical Service, 362 Ill. 442, 200 N.E. 157, in which it was held that a corporation may not practice medicine in Illinois. However, we think that Article 1503 of Regulations 65 and 69 sufficiently covers this situation in providing that " * * * organizations * * * are * * * associations within the meaning of the statute even though under State law such organizations are technically partnerships."

Petitioners seek to distinguish decisions with respect to their applicability to the facts in the case before us, but the argument is not convincing, and the order of the Board of Tax Appeals is

Affirmed.

---

the absence of any control by the beneficiaries, where the trustees are not restricted to mere collection of funds and their payment to the beneficiaries, but are associated together with similar or greater powers than the directors in a corporation for the purpose of carrying on some business enterprise, the trust is an association within the meaning of the statute."