88 F.2d 355 (1937)
COMMISSIONER OF INTERNAL REVENUE
v.
HIGHLANDS EVANSTON-LINCOLNWOOD SUBDIVISION, FIRST ADDITION TRUST NO. 1546, CENTRAL REPUBLIC TRUST CO.
SAME
v.
HIGHLANDS EVANSTON-LINCOLNWOOD SUBDIVISION TRUST NO. 1521, CENTRAL REPUBLIC TRUST CO.
Nos. 6016, 6017.
Circuit Court of Appeals, Seventh Circuit.
February 16, 1937.
*356 F. E. Youngman, of Washington, D. C., Robert H. Jackson, Asst. Atty. Gen., and Sewall Key, Norman D. Keller, and Ellis N. Slack, Sp. Assts. to Atty. Gen., for petitioner.
Franz W. Castle and Howard R. Brintlinger, both of Chicago, Ill., for respondents.
Before EVANS, Circuit Judge, and LINDLEY and BRIGGLE, District Judges.
BRIGGLE, District Judge.
The question for consideration is whether respondent trusts are associations within the meaning of section 701 (a) (2) of the Revenue Act of 1928 (45 Stat. 791, 26 U.S.C.A. § 1696 (3). The Board of Tax Appeals held they were not and for that reason relieved them from an assessment made by the Commissioner for income taxes for the years 1929, 1930, and 1931.
The facts: In 1925 the Paramount Realty Corporation was organized for the purpose of promoting a subdivision. It desired to acquire a ten-acre tract of land at $60,000, and a twenty-acre tract at $110,000. Not having sufficient funds with which to meet the initial payments of $25,000 in the case of the ten-acre tract and $50,000 in the case of the twenty-acre tract, various individuals were solicited for funds. An amount sufficient for the initial payments was collected from a number of individuals, hereinafter referred to as the beneficiaries, and trust agreements were entered into. The agreement in regard to the ten-acre tract, known as Trust No. 1521, and that relating to the twenty-acre tract and known as Trust No. 1546, are in all essentials similar and will be treated as one. The trust agreement provided that the beneficiaries would furnish sufficient cash to meet the initial payments and would subscribe the balance of the purchase price within sixty days. They also agreed to furnish any funds required to pay taxes, special assessments, interest, etc. The agreement fixed the proportionate interest of each beneficiary and provided that legal title to the property was to be taken in the name of the trustee (now appellee herein), and it was authorized to have the lands subdivided and platted under the direction of the Realty Company. The Realty Company was to be the manager of the trusts and was empowered to sell lots at fixed prices to aggregate not less than $200,000 for the ten-acre tract and $400,000 for the twenty-acre tract; in the case of cash sales the Realty Company was to retain one-third of the sale price and the balance was to be paid to the trustee for the beneficiaries of the trust; in installment sales the down payment (not to exceed 25 per cent. of sale price) was to be retained by the Realty Company and subsequent installments were to be collected by the trustee and held, two-thirds for the use of the beneficiaries and one-third for the Realty Company. Upon payment to the beneficiaries of $105,000 in the case of the ten-acre tract and $200,000 in the case of the twenty-acre tract, with interest, all rights of the beneficiaries terminated and all interest in the property and in the proceeds of sales vested in the Realty Company and the trustee was obliged to account solely to it.
It was further provided in the agreement that upon completion of sales the trustee would make conveyance of the respective lots to the purchasers and make distribution of the proceeds as noted. It contained a provision that the interest of each beneficiary was to be deemed personal property and no beneficiary was to have any title or interest in the real estate as such, but each was to have a power of direction and a right to receive proceeds. The trustee was to deal with the property only on written direction of the Realty *357 Company or of the beneficiaries. Each beneficiary received a certificate defining his specific interest in the trust, described as "a proportionate interest in the net income, proceeds and avails of the property of said trust," and each was to receive benefits in proportion to his investment. The Realty Company proceeded with a marketing of the subdivision, employed a corps of salesmen, and entered into various contracts of purchase, forwarding the original of each contract to the trustee.
Later supplemental agreements were entered into, which, among other things, provided that the trustee should pay all expenses of administering the trust, including trustee's fees, costs of issuing deeds, cost of guaranty policies, taxes, and assessments on unsold lots and on those under contract of sale where the purchaser had failed to pay (such payments, however, to be charged against the interest of the Realty Company), accumulate a "sidewalk fund," and approve bids for sidewalks.
Section 701 (a) (2) of the Revenue Act of 1928 provides that for the purpose of the act "the term `corporation' includes associations, joint-stock companies, and insurance companies" and Treasury Regulation 74[*] promulgated under such act defines an "association" and distinguishes between an association and a trust.
The question of what constitutes an "association" for the purpose of the Revenue Act has been before the courts on different occasions and some conflict has existed in the decisions. To clarify such situation the Supreme Court took and considered four separate cases  Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263; Swanson v. Commissioner, 296 U.S. 362, 56 S.Ct. 283, 80 L.Ed. 273; Helvering, Commissioner, v. Combs, 296 U.S. 365, 56 S.Ct. 287, 80 L.Ed. 275; and Helvering, Commissioner, v. Coleman-Gilbert Associates, 296 U.S. 369, 56 S.Ct. 285, 80 L.Ed. 278, all decided December 16, 1935. In the Morrissey Case the court analyzed with great care the historical background of the various acts and regulations promulgated by the Treasury Department in the construction of the same, reviewed previous decisions, and established the general principles to be followed in the determination of whether, under a given state of facts, a trust is to be treated as a "pure trust" or as an "association" within the meaning of the act.
We need only say that a study of the facts in the instant case convinces us that they fall within the definition of an association as we gather it from those cases. The trustee and the beneficiaries were, we think, actively engaged in the acquisition and development of a subdivision from which they were to derive a very *358 substantial profit  an enterprise involving a wide range of business activity. The interest of the beneficiaries was no passive interest but was a very active one, and each was to share in the profits of the venture in proportion to the sum he invested. That certain powers were delegated to and certain active duties performed by the Realty Company does not alter the situation. That points of dissimilarity to a corporation are present does not change this conclusion. Reinecke v. Kaempfer (C.C.A.) 72 F.(2d) 469. See, also, Pelton v. Commissioner (C.C.A.) 82 F.(2d) 473. We think the trust bore the substantial qualities of a corporation as defined in Article 1312, Regulations 74, supra.
The Board did not have the benefit of the four Supreme Court decisions referred to at the time of its decision of this case. In a more recent decision in the case of Central Republic Bank & Trust Co. v. Commissioner, 34 B.T.A. 391, on facts somewhat similar it held that the trust was taxable as an association.
The order of the Board is reversed and the cause remanded for further proceedings in conformity herewith.
Reversed and remanded.
NOTES
[*] Art. 1312. Association.  Associations and joint-stock companies include associations, common law trusts, and organizations by whatever name known, which act or do business in an organized capacity, whether created under and pursuant to State laws, agreements, declarations of trust, or otherwise, the net income of which, if any, is distributed or distributable among the shareholders on the basis of the capital stock which each holds, or, where there is no capital stock, on the basis of the proportionate share or capital which each has or has invested in the business or property of the organization. A corporation which has ceased to exist in contemplation of law but continues its business in quasi-corporate form is an association or corporation within the meaning of section 701.

Art. 1314. Association distinguished from trust.  Where trustees merely hold property for the collection of the income and its distribution among the beneficiaries of the trust, and are not engaged, either by themselves or in connection with the beneficiaries, in the carrying on of any business, and the beneficiaries have no control over the trust, although their consent may be required for the filling of a vacancy among the trustees or for a modification of the terms of the trust, no association exists, and the trust and the beneficiaries thereof will be subject to tax as provided by sections 161-170 and by articles 861-891. If, however, the beneficiaries have positive control over the trust, whether through the right periodically to elect trustees or otherwise, an association exists within the meaning of section 701. Even in the absence of any control by the beneficiaries, where the trustees are not restricted to the mere collection of funds and their payment to the beneficiaries, but are associated together with similar or greater powers than the directors in a corporation for the purpose of carrying on some business enterprise, the trust is an association within the meaning of the Act.