James S. and Louise H. HOLDER, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 801.

United States District Court N. D. Georgia, Newnan Division.

July 18, 1968.

 

 
 
 
 
 
 
 
 
 

 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 
 
 
 
 
 
 
 

 
 
 
 
 
 
 
 

Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for plaintiffs.

Charles L. Goodson, U. S. Atty., Slaton Clemmons, Asst. U. S. Atty., Atlanta, Ga., for defendant.

LEWIS R. MORGAN, Chief Judge.

The plaintiffs have sued in this Court for refund of federal income taxes paid for the year ending December 31, 1964, in the amount of $2,683.98, with interest at 6 percent from July 19, 1967, and for refund of federal income taxes paid for the year ending December 31, 1965, in the amount of $5,313.18, with interest at 6 percent from July 19, 1967. Plaintiffs are husband and wife. Mrs. Holder is a party to this action only because joint income tax returns were filed by Dr. and Mrs. Holder for the years in suit. Plaintiffs claim that Clark-Holder Clinic Professional Association, hereinafter referred to as the Association, a professional association under the Georgia Professional Association Act (Georgia Code Annotated Chapter 84-43), is taxable as a corporation within the meaning of Section 7701(a)(3) of the Internal Revenue Code of 1954, and that therefore Dr. Holder should have paid his income tax as an employee-stockholder of the Association, and not as a partner in a partnership, as contended by the defendant.

The case was submitted on May 27, 1968, to the Court sitting without a jury for a decision on the merits based upon stipulated facts. Oral argument was made by both plaintiffs and defendant. The defendant did not defend the merits of plaintiffs' claim for the year ending December 31, 1964, and waived defense to Count One of plaintiffs' complaint. The case is now properly before the Court for determination.

The parties stipulated most of the facts, and a brief summary of the stipulation thereof is hereinafter set out, along with specific findings of fact by the Court.

Plaintiffs filed timely joint income tax returns with the defendant for the years 1964 and 1965 and paid the amounts of taxes shown to be due by said returns. The defendant upon examination of the plaintiffs' returns for the years 1964 and 1965 assessed additional tax in the respective amounts of $2,683.98 and $5,313.18. Said amounts were paid by the plaintiffs under protest, and plaintiffs thereafter filed timely claims for refund. The claims for refund were subsequently disallowed by the defendant, and this action for refund was instituted.

Dr. Holder began practicing medicine in LaGrange, Georgia, in 1935. During the subsequent years, he joined with several other physicians in practicing medicine as a partnership. By 1953, the partnership had become so large and unwieldy that, in order to obtain more centralized control and management, Articles of Association and By-Laws were established, and a business manager was hired. This was done as an internal matter even though such action had no effect with respect to third parties since Georgia law at that time did not recognize the practice of medicine by associations.

In 1961, the Georgia Professional Association Act was enacted. The Articles of Association of the Association were executed on September 26, 1961, and filed with the Clerk of the Superior Court of Troup County, Georgia, on September 27, 1961. Seven doctors initially subscribed for stock in the Association, including Dr. Holder. By-Laws were also adopted by the shareholders on September 26, 1961, and a Board of Governors of five members was elected. On October 10, 1961, the Association adopted a Profit-Sharing Plan and Trust Agreement, under which contributions were made on behalf of Dr. Holder for fiscal years ended September 30, 1964, and September 30, 1965.

The Association pays all State Corporation License Taxes and Corporate Income Taxes to the State of Georgia and is treated as a corporation for all purposes of the Georgia Revenue Code. It also pays taxes under the Federal Unemployment Tax Act and under the Federal

Insurance Contribution Act and collects Federal Withholding Taxes just as another domestic corporation would. Such taxes were collected with respect to Dr. Holder.

In accordance with Rev.Proc. 61–11, 1961–1 Cum.Bul. 897, on October 31, 1961, the Association filed its Articles of Association, By-Laws, Employment Contracts, a copy of the Georgia Professional Association Act and the Profit-Sharing Plan and Trust with the District Director of Internal Revenue requesting that he make a determination that the Association would be taxable as a corporation and that its members would be treated as corporate employees and that its Profit-Sharing Plan and Trust was qualified under Section 401(a) of the Code.

No word was received from the Internal Revenue Service until July 6, 1966, when the District Director, Internal Revenue Service, Atlanta, Georgia, wrote to the Association stating that it would be treated as a corporation for Federal Income Tax purposes for all of its fiscal years ending before December 31, 1964, and that its members who engaged in the practice of medicine would be treated as corporate employees, for years ending prior to December 31, 1964.

On August 31, 1966, the same District Director wrote to the Association and stated that the Trust established as part of its employees' Profit-Sharing Plan was a qualified Trust under Section 401(a) of the Internal Revenue Code, and exempt from income tax under the provisions of Section 501(a) of the Code.

The Association owns, in its own name and in its own right, accounts receivable, medical equipment, instruments, drugs and supplies, bank accounts, savings certificates and insurance policies. Checks drawn on the bank account of the Association are signed by the President and countersigned by the Secretary. The following documents are regularly used by the Association with an imprint of its name: stationery, prescription forms, billing forms, and purchase-order forms. Bills are sent to patients and clients in the name of "Clark-Holder Clinic Professional Association" and the checks covering those bills are made out in the same name. During the taxable years in question, the Association operated under the provisions of the Georgia Professional Association Act, and was in good standing with the Secretary of State of Georgia and qualified to operate as a professional association under the laws of Georgia. Under a lease agreement, the Association leases its building from another corporation. The Association has an Employer's Identification Number, and has in effect comprehensive professional liability insurance policies covering all professional employees.

The Board of Governors of the Association has regularly met, and the stockholders have regularly met, since the formal organization of the Association on September 26, 1961, and minutes of all these meetings have been kept.

The Association employs a business manager and thirty non-physician personnel whose duties range from nursing service to stenographic and clerical duties. The Association also employs eleven physicians, including Dr. Holder. The employment contracts between the Association and the physicians, executed annually, set out terms of salary, vacation, ownership of records, competition with the Association, illness and disability benefits, termination of employment, and other matters.

Article III of the By-Laws of the Association provides that the business and affairs of the Association shall be managed and directed by a Board of Governors which will determine all questions of policy and supervise the practice of medicine by the Association. A Board of Governors composed of five stockholders does manage the affairs of the Association, and determines the salaries to be paid to all employees, including those who happen to be officers and stockholders, and also determines their hours of work, working conditions and vacations. It determines all questions of policy, su-

pervises the practice of medicine, and manages and controls the employees, including the assignment of personnel. However, the Board delegates certain specific responsibilities to the officers. For example, the Board has delegated the duty of determining all professional salaries to the President and has delegated the duty of determining all non-professional salaries to the Secretary, subject to the approval of the President and Vice-President.

Article IV of the Articles of the Association provides that it shall not be terminated, dissolved or in any similar manner affected by the death, insanity, incompetency, conviction for felony, resignation, withdrawal, transfer of membership or ownership of shares, retirement, or expulsion of a stockholder, or by a vacancy on the Board of Governors or by any changes in the medical staff of the Association or by the happening of any other event which under the law of the State of Georgia would work a dissolution of a partnership. That Article also provides that the duration of the Association shall be perpetual.

Article III of the Articles of the Association provides that any disabled, retired or withdrawn stockholder or the personal representative of a deceased stockholder may sell his share interest in the Association to any physician or surgeon duly licensed under the laws of the State of Georgia for any price or upon any terms he may desire without any obligation to first offer said share interest to the Association. Article V provides that any physician or surgeon licensed by the State of Georgia who shall have purchased the share interest of a stockholder shall be eligible for Associate status by virtue of the purchase of such share interest and no further action by the Association or by the Board of Governors shall be necessary to confer the rights and privileges of such status.

■ This Court finds as a fact that the principal purpose in forming the Association was the business purpose of controlling a sizeable and unwieldy organization and to obtain other benefits, such as limited liability, provided by the Georgia Professional Association Act.

The cases setting out the criteria of taxability as a corporation under I.R.C. 1954, § 7701(a) (3), are: Morrissey v. Commissioner of Internal Revenue, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263 (1935); Pelton v. Commissioner of Internal Revenue, 82 F.2d 473 (7 Cir., 1936); United States v. Kintner, 216 F.2d 418 (9 Cir., 1954); Galt v. United States, 175 F.Supp. 360 (N.D.Texas, 1959); Foreman v. United States, 232 F.Supp. 134 (S.D.Fla., 1964); Empey v. United States, 272 F.Supp. 851 (D.C. Col., 1967); and O'Neill v. United States, 281 F.Supp. 359 (N.D.Ohio, 1968).

■ These cases set out and reaffirm the four basic criteria established by *Morrissey*: (a) Centralized Management; (b) Continuity of Life; (c) Transferability of Interest; and (d) Limited Liability.

■ Applying the standards set out in the foregoing cases and the provision of the Georgia Professional Association Act which provides for management by a Board of Governors, Ga. Code Ann. § 84–4308, to the facts in this case, the Court finds that the Association possesses the criterion of centralized management.

■ Likewise, resort to case law and the provision of the Georgia Professional Association Act which provides for continuity, Ga. Code Ann. § 84–4309, in the factual context of the case at bar, supports a finding that the Association possesses the criterion of continuity of life.

■ Upon applying the foregoing cases and the provision of the Georgia Professional Association Act which deals with transferability of interest, Ga. Code Ann. § 84–4310, to the facts of this case, the Court finds that the Association possesses the criterion of free transferability of interest.

■ Finally, the Court finds, in accordance with the cases, and in applying the provision of the Georgia Professional Association Act which deals with limited liability, Ga. Code Ann. § 84-4307, that the Association possesses the criterion of limited liability.

These findings are consistent with the tests of taxability as a corporation set out in the 1960 Treasury Regulations, Regs. § 301.7701-2. In fact, the Association is virtually identical to the clinic approved as an association taxable as a corporation in Example (1) of those Regulations, Regs. § 301.7701-2(g). In 1965, the Treasury Department amended its Regulations, without any legislative or judicial sanction to delete Example (1) and to add a new subparagraph (h). Regs. § 301.7701-2(h) deals only with so-called "professional service organizations" and every other type of organization is judged by the provisions of Regs. § 301-7701-2(b)-(e).

■ New paragraph (h) of the 1965 Amendments is contrary to a settled construction of the statute by a series of decisions of the courts. The prior Regulations, in accord with judicial construction and congressional intent, are reinforced by repeated re-enactments of the relevant Code provisions, in effect approving the prior administrative interpretation. Fribourg Navigation Co. v. Commissioner of Internal Revenue, 383 U.S. 272, 283, 86 S.Ct. 862, 15 L.Ed.2d 751 (1966).

■ Moreover, new paragraph (h) of the Regulations is contrary to a legislative intention evidenced by the statutory definitions which have remained unchanged for thirty-five years, in the case of the Code's definition of the term "partnership", and for forty-nine years, in the case of the Code's definition of the term "corporation". A Regulation which would contradict the statute is invalid. E. P. Coady, 33 T.C. 771 (1960), aff'd 289 F.2d 490 (6 Cir., 1961).

■ The Treasury Department in the new paragraph (h) is trying to accomplish by Regulation what it failed to accomplish in litigation. For example, in Foreman v. United States, supra, the Government's argument was based upon the fact that physicians could not legally form a corporation for the practice of medicine in the State of Florida. This argument was rejected by the Court. The new paragraph (h) is nothing more than a rephrasing of that argument, to the effect that a professional association cannot be identical to a corporation. But, as stated in Morrissey v. Commissioner of Internal Revenue supra, and as demonstrated in the other cases cited above, it is *resemblance* and not *identity* which is controlling. Thus, where the proposition that the professional association must be identical to a corporation has been rejected by the courts, a new pronouncement of this proposition in the form of an administrative regulation, without judicial or legislative sanction, cannot be given weight. The criteria of taxability as a corporation have been set out, and defined, by the courts; a redefinition of these criteria by the Treasury Department which emasculates their meaning, cannot be dispositive of the question.

■ The case of O'Neill v. United States, supra, is virtually identical to the case at bar and its reasoning is sound. Analyzing the medical association in that case in the context of the Ohio Professional Association Act, Ohio Rev.Code §§ 1785.01-1785.08, which is virtually identical to the Georgia Professional Association Act, the Court found that the medical association was taxable as a corporation, and that Regs. § 301.-7701-2(h) is invalid and stated:

"The discrimination perpetuated in the regulation is not supported by the statute, judicial precedent or sound tax policy. In short, the regulation is an instance of administrative overreaching."

This Court also holds Regs. § 301.7701-2(h) invalid as inconsistent with the judicially-determined meaning of the statute, I.R.C. § 7701(a) (3).

Tested by either the standards set out under existing case law or by the application of Regs. § 301.7701–2(b)–(e), the Association is taxable as a corporation within the meaning of I.R.C. § 7701(a) (3), and Dr. Holder is taxable as an employee-stockholder thereof and not as a partner; therefore, the plaintiffs are entitled to the refunds sought.

Judgment is rendered for plaintiffs in the sum of $7,997.16, with interest at 6 percent from July 19, 1967.

This opinion is adopted by the Court as the Findings of Fact and Conclusions of Law, as provided by Rule 52, Federal Rules of Civil Procedure.

It is so ordered.