Deane D. and Frances M. WALLACE, Alex T. and Miriam S. Gillespie, and James O. and Jean B. Porter, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. LR–67–C–14.

United States District Court
E. D. Arkansas, W. D.

Oct. 31, 1968.

William H. Bowen and Jerry T. Light of Smith, Williams, Friday & Bowen, Little Rock, Ark., for plaintiffs.

Jerry A. Wells, Atty., Dept. of Justice and W. H. Dillahunty, U. S. Atty., Eastern District of Arkansas, for defendant.

### Memorandum Opinion

HENLEY, Chief Judge.

This is a suit for refunds of federal income taxes brought by Drs. Deane D. Wallace, Alex T. Gillespie, and James O. Porter of Little Rock, Arkansas, who are stockholders in and employees of a professional service corporation known as the Wallace, Gillespie & Porter Professional Association, hereinafter called the "Association," organized in 1962 under the provisions of the Arkansas Medical Corporation Act.[1] The tax year involved is calendar 1965. With respect to each of the taxpayers the Commissioner of Internal Revenue assessed deficiencies which were paid. Claims for refunds have been denied administratively. Federal jurisdiction is established. The facts are undisputed, and the case has been submitted on the pleadings, stipulations of fact, discovery material, documentary exhibits, and memorandum briefs.

While the Court is directly concerned with the individual tax liabilities of the respective taxpayers, the underlying issues relate to the status of the Association as a corporation and to the status of a profit-sharing plan and trust fund set up by the Association for its employees, including the individual taxpayers, during the fiscal year ending June 30, 1963.

As to the status of the Association, the question is whether it is entitled to be recognized as a corporation for federal income tax purposes in view of the restrictive provisions of Federal Tax Regulations, § 301.7701–2, as amended in 1965, which regulation deals in general

---

1. Act 179 of 1961, Ark.Stats., Anno., § 64-1701 et seq. During the same year the Legislature adopted the Dental Corporation Act, Act 471 of 1961, Ark.Stats., Anno., § 64–1802 et seq. Two years later the Legislature enacted a broader statute known as The Arkansas Professional Corporation Act, Act 155 of 1963, Ark.Stats.Anno., § 64–2001 et seq.

with the classification for tax purposes of certain types of organizations under statutory definitions appearing in section 7701 of the Internal Revenue Code of 1954, 26 U.S.C.A., § 7701.

As to the status of the plan and the fund, the question is whether they qualify for favorable tax treatment under the provisions of sections 401 et seq. and 501 et seq. of the Internal Revenue Code. It has been stipulated that the Government's sole objection to the qualification of the plan and the related trust is that the provisions of section 19 of the plan, hereinafter quoted, do not meet the requirements of section 401(a)(2) of the Code.

The advantage of corporate recognition is that if the Association is a corporation within the meaning of the federal tax laws, and if the plan is a qualified plan, the compensation paid to plaintiffs and to other employees of the Association may be deducted as ordinary business expenses of the corporation; further, contributions made by the Association to the profit-sharing plan are deductible as ordinary business expenses and are not taxable to the recipients, including plaintiffs, as income until they actually begin to receive benefits under the plan. Another benefit is to be found in the fact that the corporation has elected to be taxed as a partnership as provided by section 1371 et seq. of the Code.

As indicated the plan and trust were established in 1963. Section 19 of the plan is as follows:

"The contributions by the Company to the trust pursuant to this Plan shall be irrevocable, subject, however, to the approval of the Plan in its original form, or as amended, by the Internal Revenue Service and the allowance of a deduction for all of said contributions by reason thereof. In the event the Plan is not approved by the Internal Revenue Service, all contributions and accumulated income shall be returned to the Company and the rights of all participants shall be deemed forfeited."

During 1963 and 1964 the Association made contributions under the plan. Those contributions were deducted as expenses by the Association when it filed its returns for fiscal 1963 and fiscal 1964. The amounts of the contributions to the fund were not reported as income by plaintiffs when they filed their returns for calendar 1963 and calendar 1964. The same course was followed with respect to the Association's return for fiscal 1965 and with respect to plaintiffs' individual returns for calendar 1965.

The Commissioner took no exception to the returns for 1963 and 1964. However, on the basis of the 1965 amendment to FTR § 301.7701–2 the Commissioner challenged the 1965 returns and this suit followed.

I.

It is clear that Arkansas adopted the statutes which have been mentioned for the express purpose of permitting professional people, such as doctors, lawyers, and dentists, to practice within the framework of corporations so as to gain the tax benefits which have been outlined. Williams, Medical and Dental Corporations; a Step Toward Tax Equality, 15 Univ. of Ark. Law Review 366 et seq. Many other States have taken the same course. 7 Merten's Law of Federal Income Taxation, Zimet and Barton Revision § 38A.32; Re Florida Bar, Fla., 133 So.2d 554, 4 A.L.R.3d 375, and Annotation beginning at page 383; Empey v. United States, D.C.Colo., 272 F.Supp. 851.

Section 2 of the Arkansas statute permits any two or more licensed physicians to form a corporation to study, diagnose, and treat human ailments and injuries and to promote medical, surgical, and scientific research and knowledge, provided that medical and surgical treatment, consultation, and advice may be given only by licensed physicians. Section 3 of the Act provides in general that medical corporations are to be governed by laws applicable to ordinary business corporations. However, other sections

of the Act make it clear that a doctor employed by a medical corporation does not lose his professional standing nor is he relieved of professional responsibilities and discipline merely because he is working for a corporation.

No contention is here made that the Association is not a "corporation" as far as Arkansas law is concerned. It was organized as provided by the Act. All of its shareholders and officers are doctors, who are also corporate employees. The corporation has articles of incorporation and by-laws; its affairs are managed by a board of directors; there are regular meetings of stockholders and directors. The Association has an employer's identification number supplied by the District Director of Internal Revenue at Little Rock; federal income taxes and the employees' share of social security taxes are withheld from wages paid by the Association; the Association pays social security and unemployment compensation taxes with respect to each of the plaintiffs. The Association carries workmen's compensation, group life, medical and disability income insurance covering the plaintiffs and other employees. Stock interest in the Association can be owned by a licensed doctor only; if a shareholder dies, retires, or desires to withdraw from the Association his stock is to be purchased by the Association at book value after appropriate adjustments. It does not appear that a stockholder has a right to sell his stock to any doctor outside the Association.

The Regulation relied on by the Government prescribes a number of criteria by which it is to be determined whether a business organization is to be considered a corporation for federal tax purposes. The Government argues that the question of whether an organization is entitled to be treated as a corporation for income tax purposes is a federal question, and that State law is not controlling; that the regulation in question is a valid one, and that the Association does not meet the regulatory criteria. Hence, the Government contends, the Association is not entitled to corporate tax treatment and must be considered to be a partnership not entitled to the tax advantages sought to be gained.

Plaintiffs contend that the regulation is invalid. Alternatively, they argue that even if the regulation is valid, the Association meets the criteria thereof.

II.

As is well known, there are certain types of business organizations which, though not incorporated, closely resemble corporations, and the statutory definition of a "corporation" includes "associations, joint-stock companies, and insurance companies." 26 U.S.C.A., § 7701 (a) (3). And unincorporated business organizations have been taxed as corporations if they have sufficient resemblances to corporations. Morrissey v. C. I. R., 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263; Wholesalers Adjustment Co. v. C. I. R., 8 Cir., 88 F.2d 156; Pelton v. C. I. R., 7 Cir., 82 F.2d 473.

In 1948 it turned out to be to the tax advantage of a group of Montana doctors, practicing as a clinic, to be treated as a corporation for federal tax purposes; the Internal Revenue Service took the position that the organization was a partnership. The Court of Appeals held that the clinic had more of the characteristics of a corporation than of a partnership and should be taxed as a corporation. United States v. Kintner, 9 Cir., 216 F.2d 418.

The Treasury announced that it would not follow the Kintner decision, Rev. Rul. 56–23, 1956–1 Cum.Bull. 598, and in 1960 the Treasury adopted regulations designed to offset the effect of *Kintner* "and to make it as difficult as possible for *unincorporated organizations* to be taxable as corporations." Empey v. United States, supra, 272 F.Supp. at 852.

The fear of professional people that the 1960 Regulation would render the Kintner decision valueless to them from a tax standpoint and the belief that the problem could be solved by securing

legislation permitting doctors, lawyers, and the like to incorporate led to the agitation for and the adoption of appropriate State legislation. Williams, op. cit., at 369–370; Empey v. United States, supra, 272 F.Supp. at 852.

Such legislation prompted the Treasury to adopt the present Regulation upon which the Government relies. As pointed out in the Empey case, the 1960 Regulation seems not to have been aimed at *incorporated* associations. The present Regulation takes the view that a professional service corporation is not to be accorded corporate treatment merely because it is incorporated under State law.

That Regulation makes it clear that the position of the Treasury is that, irrespective of corporate organization, a professional service group in order to qualify for corporate recognition must meet a number of tests; and the text emphasizes what the Internal Revenue Service seems to think are inherent differences between professional service organizations and ordinary business corporations even though the former may have been incorporated legally under State law.

The validity of the present Regulation was directly involved in the Empey case, supra, and it was held invalid. The Court said (pp. 853–854 of 272 F.Supp.):

"VALIDITY OF REGULATIONS

"As just noted, the regulations require that Drexler and Wald, even though formally incorporated, be taxed as a partnership unless its corporate characteristics are such that it more nearly resembles a corporation than a partnership.

"The classification of an incorporated organization as a partnership is inconsistent with the statutory definitions of partnerships and corporations found in Sec. 7701(a) of the 1954 Internal Revenue Code, which reads as follows:

" 'PARTNERSHIP AND PARTNER.—The term "partnership" includes a syndicate, group, pool, joint venture, *or other unincorporated organization,* through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term "partner" includes a member in such a syndicate, group, pool, joint venture, or organization. (Emphasis supplied)

" '(3) CORPORATION — The term "corporation" includes associations, joint-stock companies, and insurance companies.'

"There has been no substantial change in these statutory definitions since the Revenue Act of 1932 and they are identical to the definitions in the 1939 Code.

"An examination of the foregoing statutory definition of a 'partnership' reveals that the definition refers only to 'unincorporated' organizations. By this definition 'incorporated' organizations are necessarily excluded. The defendant has cited no cases and we have found none which has construed the term 'partnership' to include an 'incorporated' organization, nor has the defendant referred to any legislative history which would indicate a Congressional intent to do so. Even if the partnership definition permitted the inclusion of incorporated organizations, neither the statute nor the case law supports the Treasury's position that organizations of professional men such as doctors and lawyers must be taxed as partnerships and not as corporations.

"There is no such provision in the statute and judicial construction of the statute is to the contrary.

"In 1936 in Pelton v. Commissioner of Internal Revenue, (C.A.-7th) 82 F.2d 473, the Court upheld the Commissioner's contention that an unincorporated association of doctors should be treated for federal

tax purposes as a corporation even though an Illinois Supreme Court decision held that a corporation could not practice medicine in Illinois.

"In 1954 in United States v. Kintner (supra), 216 F.2d 418 (C.A. 9th–1954), the United States urged the taxation of an unincorporated association of doctors operating a clinic as a partnership. The Court rejected the Government's position, cited the *Pelton* case with approval, and held the association taxable as a corporation.

"In 1959 in Galt v. United States, (supra), 175 F.Supp. 360 (N.D.–Tex.), the District Court held an unincorporated association of doctors taxable as a corporation, although Texas does not authorize a corporation for the practice of medicine. The Court stated that *Kintner* decision ' * * * to be very much in harmony with the Court's views.'

"There appears to be no case law to the contrary and Congress has not seen fit to take any legislative action to repudiate this uniform and long-standing judicial construction of the statute.

"The Court concludes that the Treasury regulations are inconsistent with the statute and the judicial construction thereof and that the regulations constitute the exercise of a nondelegable legislative function and are invalid and unenforceable. A. L. A. Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935); Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935); United States v. Zions Savings and Loan Association, 313 F.2d 331 (C.A. 10th, 1963)."

Further on, the Court proceeded to reject the Regulation's view that "organizations of doctors and lawyers cannot meet the test of corporate resemblance." (272 F.Supp. at 854.) It was stated that such a view was contrary to the facts as found in both *Pelton* and *Kintner*, supra, in both of which cases "the Courts found that an unincorporated association of doctors had sufficient corporate characteristics to require their taxation as corporations." (Ibid.)

In two very recent District Court cases the Regulation has been held invalid as being unreasonable, discriminatory, and in conflict with the statute and with cases construing it. Kurzner v. United States, S.D. Fla., 286 F.Supp. 839, and Holder v. United States, N.D. Ga., 289 F. Supp. 160.

▆▆▆ This Court finds itself in agreement with the three decisions last cited and now holds that the Regulation is invalid.[2] It may well be argued that the State legislation which has been described opens an undesirable loophole through which professional people can slip and thereby avoid paying their fair share of the national tax burden. If so, that loophole may be closed by the Congress by appropriate legislation.

### III.

As stated, the Government's objection to the Associations profit sharing plan and related trust is based solely on the contention that section 19 of the plan does not meet the requirements of section 401(a) (2) of the Code. The relevant statutory language is as follows:

"§ 401. *Qualified pension, profit-sharing and stock bonus* plans.

"(a) *Requirements for qualification.*—A trust created or organized in the United States and forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or

2. That holding renders it unnecessary for the Court to consider plaintiffs' alternative contention that the Association meets the criteria of the Regulation assuming it to be valid.

their beneficiaries shall constitute a qualified trust under this section—

\* \* \* \* \* \*

"(2) if under the trust instrument it is impossible, at any time prior to the satisfaction of all liabilities with respect to employees and their beneficiaries under the trust for any part of the corpus or income to be (within the taxable year or thereafter) used for, or diverted to, purposes other than for the exclusive benefit of his employees or their beneficiaries."

In determining whether the Association's plan qualifies under the statute it is important to remember that an employer's profit-sharing or pension plan is one thing, and that the trust fund into which the employer's contributions are paid is another thing. And to say that the trust must be irrevocable and that the trust fund must not be subject to diversion does not mean that the plan may not be amended or terminated, provided that the amendment or termination does not involve an invasion of vested rights in contributions made up to the time of amendment to termination.

■ Section 401(a) (2) does not prohibit the amendment or termination of profit-sharing, pension or stock bonus plans. It does mean that if a plan is to be a qualified plan under the section, the trust set up in connection with the plan must be irrevocable, and that it must be beyond the power of the employer to use or divert trust funds from the ultimate enjoyment of the employees or their beneficiaries until such time as all liabilities with respect to employees and beneficiaries have been satisfied.

The Government concedes in the light of relevant authorities, including Treasury Rulings and Tax Court decisions, the statute does not absolutely disqualify a plan which is subject up to a point to approval of the Internal Revenue Service and which provides that in the event of disapproval contributions may be recovered and the plan abandoned. And "early established" plans containing

such provisions have been held to be qualified under the statute. See Rev. Rul. 65–178 Cum.Bull. 1965–2, 94, 109–110; Rev.Rul. 60–276 Cum.Bull. 150; William D. O'Brien v. C. I. R., 46 T.C. 583; Meldrum & Fewsmith, Inc. v. C. I. R., 20 T.C. 790; 555, Inc. v. C. I. R., 15 T.C. 671; Surface Combustion Corp. v. C. I. R., 9 T.C. 631, aff'd 6 Cir., 181 F.2d 444.

However, as the Court understands it, the Government's argument is that initial approval or disapproval of a plan marks the limit beyond which an employer's right to recapture contributions to an employees' trust fund may not validly extend, and that section 19 of the Association's plan exceeds that limit.

More specifically, the Government argues that under section 19 the irrevocability of contributions to the fund depends upon continued Treasury approval of the plan, and that if the plan is disapproved at any time in the future, even if approved originally, the Association would have a right to recover all contributions made down to the time of the ultimate disapproval.

Plaintiffs deny that the Government's position has merit, and the Court agrees with them.

■ In the last analysis a profit-sharing plan such as the one involved in this case is a contract between employer and employee and is subject to general rules governing the construction of contracts. Those rules include the following: a contract is to be considered as a whole, and if the agreement of the parties is embraced in two or more instruments, both or all of the instruments must be considered together; a contract is to be construed reasonably and so as to carry out the intent of the contracting parties; if the contract is ambiguous the practical construction accorded to it by parties performing under it is entitled to weight in determining its meaning; a contract which does not express the true intent of the parties may in proper cases be the subject of reformation.

The Court thinks that section 19 of the Association's plan must be read in connection with section 13 of the plan, and in connection with section "J" of the trust agreement.

While section 13 recognizes the right of the Association to amend or terminate the plan at any time, that section goes on to provide that "no amendment or termination shall permit the use of any part of the Trust Fund for any purpose other than for the exclusive benefit of participants and their beneficiaries nor affect the Company's contributions for prior years or the participants' then existing rights to the Trust Fund."

It has been seen that section 19 declared that "contributions by the company to the trust pursuant to this Plan should be irrevocable, subject to the approval of the Internal Revenue Service of the plan in its original form, or as amended, and to the allowance of a deduction for all of the Association's contributions by reason thereof," and that in the event the plan should not be approved, all contributions and accumulated income should be returned to the company and that the rights of all participants should be deemed forfeited.

Section J of the trust instrument provides that the trust is declared to be irrevocable. While that section recognizes the right of the Association to amend or terminate the plan, it is stipulated that no such amendment or termination "shall (1) cause any part of the Trust Fund to revert to or be recoverable by the Company or to be used for or diverted to any purpose other than for the exclusive benefit of participants or retired or terminated participants and their beneficiaries * * *"

Assuming at least for the sake of argument that section 19, standing alone, is subject to the construction which the Government would place upon it, the Court thinks that such a construction would be a strained and unreasonable one and contrary to the intent of the

parties plainly shown by the record in this case.

It has been stipulated between the plaintiffs and the Government that it was the intention of the parties to the plan that the recapture provision of section 19 should be limited to contributions made by the Association during the fiscal year ending June 30, 1963. It has been stipulated further that although the Association did not request or receive a formal Internal Revenue Service ruling on the qualification of the plan, the Commissioner did not challenge the Association's deductions of its contributions to the trust during the fiscal year just mentioned or during the fiscal year ending June 30, 1964. And it has been stipulated still further that the parties to the plan considered the allowance of the deductions to be tantamount to an approval of the plan as qualifying under section 401(a) (2).

In view of those stipulations it seems clear to the Court that the Association and its employees anticipated that the plan would be considered by the Internal Revenue Service in connection with the 1963 tax returns, and that the plan would either be approved immediately, perhaps after amendment, or that it would be rejected immediately in which event the year's contributions would be returned to the Association and the plan would be terminated. Whether or not the Association and the plaintiffs were justified in anticipating early administrative consideration of the plan, and whether or not they were justified in considering that the failure of the Internal Revenue Service to challenge the deductions amounted to an approval of the plan, the Court thinks that such anticipation and consideration were not unreasonable.

There is no suggestion here that the plan was a sham, or that it was designed as a means of unlawful tax evasion by either the Association or the plaintiffs. On the contrary, it is evident that the Association and the plaintiffs were at-

tempting to devise a plan which would give legitimate tax advantages, and that they intended by their contract documents to establish a plan and a trust which would qualify under section 401 (a) (2).

On the record as a whole the Court finds that section 19 of the plan should be construed as plaintiffs would have it construed, and that it qualified under the statute just mentioned.

Counsel should have no difficulty in agreeing upon a form of judgment.