CALFEE, HALTER & GRISWOLD, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 43655-85R—43659-85R,     Filed March 23, 1987.
2753-86R—2756-86R.

[1]Cases of the following petitioners are consolidated herewith: Keithley Instruments, Inc., docket No. 43655-85R; Dunlop & Johnston, Inc., docket No. 43656-85R; Buckeye Rubber & Packing Co., docket Nos. 43658-85R and 43659-85R; World Shipping, Inc., docket No. 2753-86R; Casimer F. Radkowski, M.D., Inc., docket Nos. 2754-86R, 2755-86R, and 2756-86R.

*Thomas A. Jorgensen* and *Mary M. Reil*, for the petitioners.

*Steven W. Ianacone*, for the respondent.

WILLIAMS, *Judge:** The Commissioner determined that the trusts created or organized as part of petitioners' pension plans or profit-sharing plans were not qualified trusts within the meaning of section 401(a).[2] Petitioners seek a declaratory judgment of this Court pursuant to section 7476 that the trusts constitute qualified trusts within the meaning of section 401(a).[3]

## FINDINGS OF FACT

Each of these consolidated cases was submitted on a stipulated administrative record pursuant to Rule 122 and Rule 217(b)(1).[4] The facts and representations contained in the stipulated administrative records are assumed to be true. Rule 217(b)(1). The principal place of business of each petitioner at the time its petition was filed was as follows:

| Docket No. | Petitioner | Principal place of business |
| --- | --- | --- |
| 43657-85R | Calfee, Halter & Griswold | Cleveland, Ohio |
| 43655-85R | Keithley Instruments, Inc. | Solon, Ohio |
| 43656-85R | Dunlop & Johnston, Inc. | Cleveland, Ohio |
| 43658-85R | Buckeye Rubber & Packing, Co. | Beachwood, Ohio |
| 43659-85R | Buckeye Rubber & Packing, Co.[5] | Beachwood, Ohio |
| 2753-86R | World Shipping, Inc. | Cleveland, Ohio |
| 2754-86R | Casimer F. Radkowski, M.D., Inc. | Cleveland, Ohio |
| 2755-86R | Casimer F. Radkowski, M.D., Inc. | Cleveland, Ohio |
| 2756-86R | Casimer F. Radkowski, M.D., Inc.[6] | Cleveland, Ohio |

*By order of the Chief Judge, these cases were reassigned to Judge Williams for decision and opinion.

[2] All section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue, unless otherwise indicated.

[3] The statutory prerequisites for declaratory judgment jurisdiction of this Court have been satisfied: (1) Petitioners are the employers who organized or created the retirement plans at issue in these consolidated cases; (2) petitioners have exhausted their administrative remedies; (3) these cases are cases of actual controversy involving determinations by respondent with respect to the initial or continuing qualification of the retirement plans at issue under sec. 401; (4) petitioners in each case have satisfied the notice requirements of sec. 7476(b)(2).

[4] All Rule references are to the Tax Court Rules of Practice and Procedure.

[5] Petitioner Buckeye Rubber & Packing Co. organized and created two trusts which are the subject of separate petitions herein: the Buckeye Rubber & Packing Co. Employees' Profit Sharing Trust and Plan (docket No. 43658-85R); and, the Buckeye Rubber & Packing Co. Employees' Stock Bonus Trust and Plan (docket No. 43659-85R).

[6] Petitioner Casimer F. Radkowski, M.D., Inc. organized and created three trusts which are the subject of separate petitions herein: the Casimer F. Radkowski, M.D., Inc. Employees' Defined Benefit Trust and Plan (docket No. 2754-86R); the Casimer F. Radkowski, M.D., Inc.

## A. *Calfee, Halter & Griswold, Docket No. 43657-85R*

Calfee, Halter & Griswold (CHG) is a partnership that established the Calfee, Halter & Griswold Pension Plan and the Calfee, Halter & Griswold Pension Trust in 1968. CHG amended and consolidated the plans effective as of January 1, 1976. In response to a request by CHG, respondent issued a favorable determination letter with respect to the consolidated plan, as amended, on October 25, 1977. Respondent issued a favorable determination letter on June 25, 1980, with respect to the continuing qualification of the plan as amended by CHG subsequent to October 25, 1977, and on July 22, 1982, with respect to the continuing qualification of the plan as amended by CHG subsequent to June 25, 1980.

CHG adopted amendments to its plan on December 27, 1982, and December 29, 1983, following which it requested a determination that the plan, as amended, continued as a qualified plan pursuant to section 401(a) and section 401(k).[7] A third amendment was adopted on December 27, 1984, and submitted to respondent for approval.

Respondent issued a proposed adverse determination letter with respect to the plan on September 24, 1984, and a final adverse determination letter on September 9, 1985. Respondent's final adverse determination letter states in part:

This determination was made because plan Section 22.5 permits a reversion of employer contributions for any year the plan fails to qualify, for any reason. This type of reversion is not allowed by section 401(a).

Section 22.5 of petitioner's plan, the provision in dispute in this case,[8] states as follows:

No contribution or payment by the Company to the Trustee of this Trust and Plan, nor any income of the Trust Fund, shall in any event revert or be credited to or be used for the benefit of the Company, and all such contributions, payments and income shall be used solely and exclusively for the benefit of the participants and their beneficiaries

---

Employees' Profit-Sharing Retirement Plan and Trust (docket No. 2755-86R); and, the Casimer F. Radkowski, M.D., Inc. Employees' Money Purchase Pension Plan and Trust (docket No. 2756-86R).

[7]CHG sought an initial determination with respect to the qualification of the plan under sec. 401(k). This issue is not in dispute in this case and is not a part of our inquiry herein.

[8]The parties agree that the provisions of each of petitioners' plans in dispute, which form the basis for respondent's adverse determinations, are indistinguishable.

under this Trust and Plan, except that the Trustee shall return to the Company upon written request of the Company:

(a) any contributions made by the Company by a mistake of fact, provided such contributions are returned to the Company within one (1) year after the date such contributions were made;

(b) any contributions made for plan years during which this Trust and Plan does not qualify under Section 401(a) of the Internal Revenue Code, provided such contributions are returned to the Company within one (1) year after the date of denial of qualification; and

(c) any contributions, to the extent that their deduction is disallowed under Section 404 of the Internal Revenue Code, provided that such disallowed contributions are returned to the Company within one (1) year after the disallowance of the deduction.

This provision was adopted by petitioner on December 30, 1976.

## B. *Keithley Instruments, Inc., Docket No. 43655-85R*

Keithley Instruments, Inc. (Keithley), is a corporation that established the Keithley Instruments, Inc. Employees' Pension Plan in 1972. The plan was amended and restated in 1976, and was merged into the Keithley Instruments, Inc. Employees' Profit-Sharing Trust and Plan on September 29, 1978. Pursuant to a request filed by Keithley, respondent issued a favorable determination letter with respect to the continuing qualification of the plan on May 23, 1980, conditioned upon the adoption of proposed amendments. Respondent issued favorable determination letters on August 28, 1981, and on May 2, 1983, in response to further requests filed by Keithley after adoption of subsequent amendments.

Keithley adopted amendments to its plan on October 18, 1983, April 6, 1984, and September 30, 1984, and filed with respondent on April 13, 1984, a request for a determination that its plan, as amended and restated, continued to satisfy the requirements of section 401(a).[9] Respondent issued a proposed adverse determination letter on November 7, 1984, and a final adverse determination letter on September 9, 1985. Keithley adopted the provision on which respondent's adverse determination is based on September 29, 1978.

---

[9] An amended request dated Dec. 14, 1984, expanded respondent's review to include the amendment adopted on Sept. 30, 1984.

## C. *Dunlop & Johnston, Inc., Docket No. 43656-85R*

Dunlop & Johnston, Inc. (D&J), is a corporation that established the Dunlop & Johnston, Inc. Salaried Employees' Profit Sharing Trust and Plan in 1972. D&J amended its plan in 1976 and in 1980. Respondent issued favorable determination letters with respect to the continuing qualification of the plan as amended and restated, on September 26, 1977, and January 31, 1980.

D&J adopted amendments to its plan on July 19, 1982, December 14, 1983, and October 25, 1984. On June 29, 1984, D&J requested a determination that the plan as amended and restated, continued to qualify under section 401(a). D&J filed with respondent a supplemental request to approve a proposed amendment, which at the time this case was submitted had not been formally adopted.

Respondent issued a proposed adverse determination letter with respect to D&J's plan on February 15, 1985, and a final adverse determination letter on September 9, 1985. D&J adopted the provision on which respondent's final adverse determination is based on May 5, 1977.

## D. *Buckeye Rubber & Packing Co., Docket No. 43658-85R*

Buckeye Rubber & Packing Co. (Buckeye) is a corporation that established the Buckeye Rubber & Packing Co. Employees' Profit Sharing Trust and Plan in 1955. Respondent issued favorable determination letters with respect to the plan on August 31, 1978, and August 13, 1980.

Buckeye adopted subsequent amendments to its plan on June 20, 1983, and March 25, 1986. On October 17, 1983, Buckeye filed with respondent a request for a determination that the plan, as amended and restated, continued to meet the requirements of section 401(a). The amendment adopted in March of 1986 had been submitted in proposed form in March of 1984 for approval.

Respondent issued a proposed adverse determination letter on November 16, 1984, and a final adverse determination letter on September 9, 1985. Buckeye adopted the provision on which respondent's adverse determination is based, on June 22, 1979.

E. *Buckeye Rubber & Packing Co., Docket No. 43659-85R*

Buckeye also established the Buckeye Rubber & Packing Co. Employees' Stock Bonus Trust and Plan on June 20, 1983,[10] and adopted an amendment to the plan on March 25, 1986. Buckeye requested an initial determination that the plan was a qualified plan pursuant to section 401(a). Buckeye also submitted on March 30, 1984, a proposed form of the amendment, adopted in March of 1986, for approval.

Respondent issued a proposed adverse determination letter on November 16, 1984, and a final adverse determination letter on September 9, 1985. Buckeye adopted the provision on which respondent's adverse determination is based on June 20, 1983.

F. *World Shipping, Inc., Docket No. 2753-86R*

World Shipping, Inc. (WSI), is a corporation which established the World Shipping, Inc. Employees' Thrift Trust and Plan in 1981. WSI filed with respondent on January 19, 1981, a request for an initial determination that the plan was a qualified plan within the meaning of section 401(a), and was issued a favorable determination letter with respect to the plan on September 16, 1981.

WSI adopted amendments to the plan on January 3, 1984, June 29, 1984, and July 23, 1985. WSI filed with respondent on March 14, 1984, a request for a determination that the plan, as amended, continued to qualify under section 401(a).[11]

Respondent issued a proposed adverse determination letter with respect to the plan on January 29, 1985, and a final adverse determination letter on October 31, 1985. WSI adopted the provision on which respondent's adverse determination is based on January 1, 1981.

G. *Casimer F. Radkowski, M.D., Inc. (CFR), Docket No. 2754-86R*

Casimer F. Radkowski, M.D., Inc. (CFR), is a corporation that organized the Casimer F. Radkowski, M.D., Inc.

---

[10]The plan was effective as of July 1, 1982.

[11]The amendments adopted by petitioner on June 29, 1984, and July 23, 1985, were submitted to respondent on June 29, 1984, and July 25, 1985, respectively, for consideration as part of its continuing review of WSI's plan.

Employees' Defined Benefit Pension Trust and Plan on April 30, 1984, and that amended the plan on October 29, 1984. CFR filed with respondent on July 16, 1984, a request for an initial determination that the plan, as amended, was a qualified plan within the meaning of section 401(a).[12]

Respondent issued a proposed adverse determination letter with respect to the plan on February 15, 1985, and a final adverse determination letter on October 31, 1985. CFR adopted the provision on which respondent's adverse determination is based on April 30, 1984.

## H. *CFR, Docket No. 2755-86R*

CFR also organized the Casimer F. Radkowski, M.D., Inc. Employees' Profit Sharing Retirement Plan and Trust in December of 1972. In response to requests filed by CFR, respondent issued favorable determination letters with respect to CFR's plan, as amended, on August 8, 1977, June 9, 1978, and May 13, 1980.

CFR filed with respondent on July 16, 1984, a request for a determination that its plan, as amended subsequent to May 13, 1980, continued to meet the requirements of section 401(a). The last amendment to CFR's plan which is before the Court in this case is dated April 27, 1984, pursuant to which the plan was merged into the Casimer F. Radkowski, M.D., Inc. Employees' Money Purchase Pension Plan and Trust (docket No. 2756–86R). Respondent issued a proposed adverse determination letter with respect to the plan on February 15, 1985, and a final adverse determination letter on October 31, 1985. CFR adopted the provision on which respondent's final adverse determination is based on October 3, 1977.

## I. *CFR, Docket No. 2756-86R*

CFR also established the Casimer F. Radkowski, M.D., Inc. Employees' Money Purchase Pension Plan and Trust in April of 1975. Petitioner's plan, as amended and restated, was the subject of favorable determination letters issued by respondent on June 4, 1975, June 9, 1978, and April 18, 1980.

---

[12]CFR submitted to respondent on Nov. 15, 1984, the amendment to its plan adopted Oct. 29, 1984, for consideration by respondent as part of its continuing review of CFR's plan.

CFR filed with respondent on July 16, 1984, a request for a determination that the plan, as amended subsequent to April 18, 1980, continued to meet the requirements of section 401(a). The last amendment to CFR's plan which is before the Court in this case is dated April 27, 1984, pursuant to which the Casimer F. Radkowski, M.D., Inc. Employees' Profit Sharing Retirement Plan and Trust (docket No. 2755-86R) was merged into the plan. Respondent issued a proposed adverse determination letter on February 15, 1985, and a final adverse determination letter on October 31, 1985. CFR adopted the provision on which respondent's final adverse determination is based on June 29, 1979.

## OPINION

The only issue before us is the effect of the provision of petitioners' plans that appears as section 22.5 of the Calfee, Halter & Griswold Profit Sharing Trust and Plan (the plan), on the qualification of the plans pursuant to section 401(a). Section 22.5 of the plan allows employer contributions to the plan to be returned to the employer under certain conditions described in that provision.

Respondent argues that plan section 22.5 permits funds to be diverted or used for a purpose other than for the exclusive benefit of the plan participants or their beneficiaries and, consequently, violates section 401(a)(2). Such a violation would result in a disqualification of the plan. Petitioners argue that plan section 22.5 is essentially equivalent to the language of section 403(c)(2) of the Employee Retirement Income Security Act of 1974, Pub. L. 93-406, 88 Stat. 829 (ERISA). Petitioners argue that the standards and requirements of ERISA section 403(c)(2), a provision not codified in the Internal Revenue Code of 1954, apply in determining the qualification of a plan pursuant to section 401(a). Petitioners contend therefore, that plan section 22.5 does not violate the standards and requirements of section 401(a)(2). For the reasons discussed below, we agree with petitioners.

Section 401(a) describes the requirements for the qualification for Federal income tax purposes of a trust forming part of a stock bonus, pension, or profit-sharing plan. Section

401(a) requires that the corpus and income of the trust be used solely for the exclusive benefit of the plan participants or their beneficiaries. Moreover, it must be impossible under the trust instrument for any part of the corpus or income of the trust to be used for or diverted to any purpose other than for the exclusive benefit of plan participants or their beneficiaries. Sec. 401(a)(2).[13]

ERISA section 403 describes the responsibilities of fiduciaries with respect to the establishment of a trust forming part of a pension plan. ERISA section 403(c) provides that the assets of such a trust must never inure to the benefit of the employer and must be held for the exclusive benefit of the plan participants or their beneficiaries. Nevertheless, an employer's contributions may be returned to him in certain narrowly defined circumstances. ERISA section 403(c)(2) provides:

(A) In the case of a contribution, or a payment of withdrawal liability under part 1 of subtitle E of part iv -

(i) made by an employer to a plan (other than ·a multi-employer plan) by a mistake of fact, paragraph (1) shall not prohibit the return of such contribution to the employer within one year after the payment of the contribution, and

(ii) made by an employer to a multi-employer plan by a mistake of fact or law (other than a mistake relating to whether the plan is described in section 401(a) of the Internal Revenue Code of 1954 or the trust which is part of such plan is exempt from taxation under section 501(a) of such Code), paragraph (1) shall not prohibit the return of such contribution or payment to the employer within 6 months after the plan administrator

---

[13]SEC. 401. QUALIFIED PENSION, PROFIT-SHARING, AND STOCK BONUS PLANS.

(a) REQUIREMENTS FOR QUALIFICATION.—A trust created or organized in the United States and forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section—

\*     \*     \*     \*     \*     \*     \*

(2) if under the trust instrument it is impossible, at any time prior to the satisfaction of all liabilities with respect to employees and their beneficiaries under the trust, for any part of the corpus or income to be (within the taxable year or thereafter) used for, or diverted to, purposes other than for the exclusive benefit of his employees or their beneficiaries (but this paragraph shall not be construed, in the case of a multiemployer plan, to prohibit the return of a contribution within 6 months after the plan administrator determines that the contribution was made by a mistake of fact or law (other than a mistake relating to whether the plan is described in section 401(a) or the trust which is part of such plan is exempt from taxation under section 501(a), or the return of any withdrawal liability payment determined to be an overpayment within 6 months of such determination)); \* \* \*

determines that the contribution was made by such a mistake. [94 Stat. 1308.][14]

(B) If a contribution is conditioned on qualification of the plan under section 401, 403(a), or 405(a) of the Internal Revenue Code of 1954, and if the plan does not qualify, then paragraph (1) shall not prohibit the return of such contribution to the employer within one year after the date of denial of qualification of the plan.

(C) If a contribution is conditioned on qualification of the plan under section 401, 403(a), or 405(a) of the Internal Revenue Code of 1954, then, to the extent the deduction is disallowed, paragraph (1) shall not prohibit the return to the employer of such contribution (to the extent disallowed) within one year after the disallowance of the deduction. [88 Stat. 876-877.]

The plan provision at issue in this case, viz, plan section 22.5, tracks ERISA section 403(c)(2) and is not broader than the statutory language. The plan provision thus does not permit any reversion of employer contributions other than a reversion specifically permitted by ERISA section 403(c)(2).

ERISA was enacted to remedy perceived defects in the private retirement system. ERISA was designed to protect the rights of employees participating in private retirement plans, and to make the system more fair and more secure by providing standards for the organization and administration of plans, vesting rights, plan funding, and plan termination. See ERISA sec. 2 at 88 Stat. 832. The bill was considered by the House Committee on Ways and Means and the House Committee on Education and Labor, and their Senate counterparts, and resulted from combining two separate bills—one to establish Federal labor law standards for the establishment and operation of pension plans, to be administered primarily by the Department of Labor; and one to amend the Internal Revenue Code of 1954 with respect to the qualification of pension plans for Federal tax purposes, to be administered by the Internal Revenue Service.

Title I of ERISA sets forth guidelines and standards governing the establishment and operation of pension plans. See generally 88 Stat. 832 et seq. The Department of Labor

---

[14]ERISA sec. 403(c)(2)(A) was amended by sec. 410 of the Multiemployer Pension Plan Amendments Act of 1980, Pub. L. 96-364, 94 Stat. 1208, 1308. Prior to amendment, ERISA sec. 403(c)(2)(A) read as follows:

"In the case of a contribution which is made by an employer by a mistake of fact, paragraph (1) shall not prohibit the return of such contribution to the employer within 1 year after the payment of contribution. [88 Stat. 876.]"

is given principal authority to administer and enforce the provisions of this title. See generally ERISA sec. 500 et seq., 88 Stat. 891 et seq. Title II of ERISA specifically amends the Internal Revenue Code of 1954 and, like title I, sets forth guidelines and standards governing the establishment and operation of pension plans qualified for Federal income tax purposes. As reported by the House Committee on Ways and Means:

This bill and the bill reported by the Committee on Education and Labor, are expected to jointly deal with participation, vesting, and funding with respect to pension plans. In these areas, this bill has been worked out in close coordination with the version of the bill expected from the Committee on Education and Labor to be sure that the general standards provided in these three areas are the same. * * * [H. Rept. 93-807, at 1 (1974), 1974-3 C.B. (Supp.) 236.]

Although the fiduciary standards of ERISA section 403(c) were not enacted as part of the Internal Revenue Code, the statute is an integrated whole which, absent clear expression of contrary legislative purpose, should be construed and applied as a whole. The legislative history of the statute confirms that the fiduciary standards were developed in coordination among the labor law-writing committees and the tax-writing committees:

Because of the *expected coordination* between your committee's bill and that of the Education and Labor Committee, no action is taken in this bill to deal with the general subjects of fiduciary standards, plan termination insurance, and reporting and disclosure, which are dealt with in H.R. 12906. H. Rept. 93-807, *supra* at 1 (1974), 1974-3 C.B. (Supp.) at 236. [Emphasis added.]

Title I and title II of ERISA were drafted in concert. To sever the act as if title I were unrelated to the tax law would result in the aberration argued for by respondent, viz, the presence in any plan of certain legal standards set forth in title I would disqualify the plan for Federal income tax purposes. ERISA's fundamental purpose is to make pension plans more fair and secure for employees and to provide incentives through the tax law for employers to establish and participate in such plans. This balance, achieved by the legislature, would be upset by reading out of the statute, for Federal income tax purposes, the reversionary clauses permitted by ERISA section 403(c)(2). See H. Rept. 93-807, *supra* at 2, 1974 C.B. (Supp.) at 237 ("Not only have the

standards in the two bills been coordinated"). The standards of title I and of title II could hardly be viewed as having been coordinated, however, if an otherwise qualified plan (i.e., fully compliant with the fiduciary standards and other Internal Revenue Code requirements) could not qualify under title II by virtue of having adopted the standards of title I. Under respondent's view of ERISA only plans that ignored the standards of ERISA, section 403(c)(2) would be qualified.

We are convinced that the statute cannot support that view, especially since the underlying concern that respondent has, viz, diversion of funds, is a question of fiduciary standards. The plan section at issue does not permit trust corpus or income to be used for, or diverted to, purposes other than for the exclusive benefit of plan beneficiaries because it is no broader than ERISA section 403(c)(2). Therefore, we conclude that a plan provision essentially equivalent to that of ERISA section 403(c)(2) does not result in a plan's failure to meet the requirements of section 401(a)(2).

Respondent places great emphasis on his position that Congress intended the tax qualification of a plan to be determined solely under title II of ERISA. Respondent's position is premised on his argument that since the statute grants the Internal Revenue Service jurisdiction to determine the tax qualification of plans seeking tax benefits pursuant to the Internal Revenue Code of 1954, the applicable standards are determined solely by reference to title II of ERISA. Although the statute vests the administration of title II in respondent, respondent is not free to pick and choose the standards to be applied. Respondent's discretion is circumscribed by the legal standards of the entire law. A grant of administrative jurisdiction pursuant to title II of ERISA does not carry with it a grant of authority to ignore the standards and guidelines set forth in title I of ERISA. This is especially true because the standards of title I and title II were closely coordinated by Congress specifically to develop a unified set of rules. Therefore, we decline to accept respondent's position.

Respondent alternatively argues that if ERISA section 403(c)(2) applies in determining the qualification of a plan for Federal tax purposes, the statute requires the plan to

limit reversion to circumstances occurring upon a failure of the plan to qualify initially or to qualify following amendment.[15] Respondent contends that if a plan permits contributions of the employer to revert to the employer *at any time* under the circumstances described in ERISA section 403(c)(2), the plan could effectively be reduced to a savings account through which the employer is able to defer the recognition of its income. We do not agree.

First, we will not base our holding on the mere possibility of abuse where, as here, there is no evidence that petitioners have acted in bad faith in an attempt to defeat or evade the requirements of Federal income tax laws. Respondent raises no such assertion, and we refuse to presume such. Second, under the terms of the statute, the circumstances under which a reversion is permitted pursuant to ERISA section 403(c)(2) are not limited to the initial qualification of a plan or continuing qualification following amendment to a plan. The legislative history of the provision is barren of support for respondent's position. See Conf. Rept. 93-1280, at 303 (1974), 1974-3 C.B. 415. We conclude that the application of the reversionary language of ERISA section 403(c)(2) is not limited to the initial qualification or continuing qualification following amendment to a plan.

Accordingly, we hold that plan section 22.5 does not violate the exclusive benefit rule of section 401(a)(2). The plans at issue are qualified plans within the meaning of section 401(a).

To reflect the foregoing,

*Decisions will be entered for the petitioners.*

---

[15]In Rev. Rul. 77-200, 1977-1 C.B. 98, respondent discusses the circumstances under which a qualified plan may permit reversions of employer contributions. Respondent concludes that "Plans which are amended only to include language essentially equivalent to the language of section 403(c)(2) of ERISA will not fail to satisfy section 401(a)(2) of the Code solely as the result of such an amendment." 1977-1 C.B. at 99. In Rev. Rul. 60-276, 1960-2 C.B. 150, respondent ruled that a plan may permit the reversion of contributions of the employer if the plan fails to qualify initially. Respondent argues on brief that these two revenue rulings apply only to situations in which an employer seeks initial qualification of a plan or continuing qualification following plan amendment. Cf. *Wallace v. United States*, 294 F. Supp. 1225 (E.D. Ark. 1968).